19233. McCLURE *v.* FARMERS & MERCHANTS BANK OF JACKSON.

DECIDED MAY 20, 1929.

*C. L. Redman, A. S. Thurman,* for plaintiff in error.
*W. E. Watkins,* contra.

BELL, J. (After stating the foregoing facts.) Under the facts alleged in the answer, the note was not without consideration. It appears that the defendant executed the note and delivered it to J. H. Carmichael in order that he might negotiate it for cash to be obtained and used by the latter personally or in some enterprise with which he was connected. The defendant was an accommodation party and Carmichael was the party accommodated. Carmichael obtained money from the bank on the defendant's note, as was contemplated by all the parties, and the furnishing of the money to him by the bank supplied the consideration for the instrument. A consideration is valid if any benefit accrues to him who makes the promise or any injury to him who receives the promise. While no benefit accrued directly to the defendant, there was a detriment or injury to the bank as promisee, in that its money was loaned to and used by a third person. Civil Code (1910), § 4242; *Farrar* v. *Bank of New York,* 90 *Ga.* 331 (17 S. E. 787).

The promise of Carmichael that the "defendant would not have to pay said note, nor would there be any liability on said note against defendant, as he, the said J. H. Carmichael, would take care of said note," and the breach of such promise by Carmichael, constituted no defense as against the bank. Such promise was the personal undertaking of Carmichael, and the bank was' in no wise bound thereby. *Peoples Bank of Talbolton* v. *Exchange Bank,* 116 *Ga.* 820 (3) (43 S. E. 269, 94 Am. St. R. 144) ; *Wallis* v. *Heard,* 16 *Ga. App.* 802, 813 (86 S. E. 391), and cit. Even if such promise could be regarded as having been made by the bank through Carmichael as its president, the breach thereof would still constitute no available defense. An unconditional promise to pay

contained in a promissory note can not be defeated by proof of a contemporaneous verbal agreement that it would never be enforced. *Pulliam* v. *Merchants & Miners State Bank,* 33 *Ga. App.* 68 (125 S. E. 509).

The averment "that the credit given upon said note" was solely on account of the guaranty of payment executed to the bank by Carmichael adds nothing to the plea. Whatever might be the effect of such an allegation under other circumstances, it is here but a bare conclusion, in conflict with the pleaded facts, and must yield thereto on demurrer. *Moore* v. *Seaboard Air-Line Ry. Co.,* 30 *Ga. App.* 466 (4) (118 S. E. 471). Furthermore, since it fully appears that the bank accepted the note as a contract between it and the defendant (*Loewenherz* v. *Weil,* 33 *Ga. App.* 760, 127 S. E. 883), it would be a contradiction of the writing and a violation of the parol-evidence rule to permit the defendant to plead and prove that the plaintiff did not extend the credit thereon, it being perfectly apparent that such fact was not expressed in any writing to which the bank was a party, and that the defendant anticipates proof of the same only by oral evidence, notwithstanding its inconsistency with his accepted written promise to pay. Civil Code (1910), § 5788; *Cole* v. *Bank of Bowersville,* 31 *Ga. App.* 435 (120 S. E. 790); 3 R. C. L. 442, § 69.

The plea failed to point out specifically what statutes or laws were violated in the making of the loans by the bank to Carmichael; but in the briefs the counsel have contended that the loans were illegal (1) because made to Carmichael, the president, without authority from the board of directors, and (2) because not made upon good collateral or other ample security, and (3) because in excess of the amount which the bank could lawfully lend to any one person, firm, or corporation; contrary to the provisions of the State banking laws upon these subjects. Ga. L. 1919, p. 135, 196; Park's Code Supp. 1922, § 2280(k) et seq.; Michie's Code, 1926, § 2366(157) et seq.

It is urged that the note in suit formed an integral part of a transaction wherein Carmichael obtained from the bank loans in violation of law, and that the note, being thus affected with illegality, should not be enforced at the instance of the bank, which was a party to the wrongful transaction.

It is the general rule that, where parties engage in an immoral

or illegal transaction, a court will not interfere to grant relief, but will leave the parties where it finds them. *Bugg* v. *Towner,* 41 *Ga.* 315 (1) ; *Heineman* v. *Newman,* 55 *Ga.* 262 (21 Am. R. 279) ; *Parrot* v. *Baker, 82 Ga.* 264 (4) (9 S. E. 1068). Counsel for the defendant seek to bring the instant case within this rule, and have cited a number of authorities dealing with gaming transactions and agreements for the purchase and sale of futures in cotton and other contracts tending to a violation of law or of the public policy of the State. In our opinion the authorities cited are not in point, because it is our judgment that the general rule as to the non-enforceability of illegal executory contracts is inapplicable to the present controversy.

A bank is a quasi-public corporation, and the laws in regard to banking are intended to protect the interests of the stockholders and creditors, and especially of depositors, who usually comprise a large number of the citizens. Such was the purpose of the particular provisions which the defendant claimed were violated in the transaction in question. The rule which the defendant would invoke was adopted for the benefit of the public, and is never enforced for the advantage of the parties. It follows that even though a contract may be illegal, the public interest may be the better subserved by granting relief upon it than by denying to one of the parties the right of suit thereon; and this may be true notwithstanding the parties are in pari delicto.

Also there are instances in which the contracts may be immoral or illegal but the parties to which are not equally culpable, and where, because of such inequality of guilt, the agreement may be enforced at the instance of the one less at fault. The distinction to be made in cases where the parties are not in pari delicto is especially applicable where the law which makes the agreement unlawful was intended for the protection of the party asking the relief. Another case is where one of the parties acts under compulsion of the other. *Howell* v. *Fountain,* 3 *Ga.* 176 (46 Am. D. 415) ; *Clarke* v. *Brown,* 77 *Ga.* 606; *Garrison* v. *Burns,* 98 *Ga.* 762 (26 S. E. 471) ; Hess *v.* Culver, 77 Mich. 598 (43 N. W. 994, 18 Am. St. R. 421, 6 L. R. A. 498) ; Hobbs *v.* Boatright, 195 Mo. 693 (93 S. W. 934, 5 L. R. A. (N. S.) 906, 113 Am. St. R. 709) ; Clark on Contracts (3d ed.), 423; 3 Williston on Contracts, 3100 ; 6 R. C. L. 829, 832; 13 C. J. 497-500.

The courts will not ordinarily undertake to ascertain or measure the relative guilt or moral turpitude of the parties, but may do so in some instances. Certainly it is proper to do so in the present case. The law places no condemnation or penalty upon the bank for making loans contrary to the banking statutes. It does provide, however, that any officer making such loans shall be guilty of crime. Ga. L. 1919, p. 135, 217, sec. 22. The fact that a penalty for such violation of the banking laws is imposed upon the officers and not upon the bank would indicate that, as to the contract between the bank and its president, the bank should not be considered in pari delicto with its president, who was the other party to the contract.

Furthermore, such contract as was made between the bank and Carmichael was made by the bank through Carmichael. Assuredly in such a case the court should not deny the bank the right to enforce the contract, for any such reason as is urged. It has been held, under the Federal banking laws, that loans made contrary to statute are not for that reason forfeited, but may be collected as any other indebtedness. Weber v. Spokane Nat. Bank, 12 C. C. A. 93 (2) (64 Fed. 208). It is the clear, if not expressed, intent of the Georgia statutes that loans, though legally excessive, shall yet be collectible. Ga. L. 1919, pp. 135, 198, secs. 13 and 14. It is indeed mild to say that the contrary is unthinkable.

That each and all of the other directors and officers had knowledge of the facts will not prevent a recovery where none of them participated in the transaction on behalf of the bank, and this is not to imply that the case would be different had their participation appeared. *Singleton* v. *Bank of Monticello,* 113 *Ga.* 527 (38 S. E. 947). Taking the facts as they are alleged in the plea, it would appear that Carmichael obtained a loan as president and that the defendant was an accommodation party thereto. Undoubtedly the bank could have enforced payment at the hands of the president as the principal debtor. The obligation of the defendant was to be liable in like manner with him. Since Carmichael was liable, the defendant was also.

Moreover, the bank became insolvent and was taken possession of by the superintendent of banks. The superintendent found the defendant's note among the papers of the bank as an apparent

asset, and he is suing thereon for the benefit of creditors. In these circumstances, it would seem that the defendant should be estopped to assert the illegality of the transaction, it not appearing that the other assets were sufficient to satisfy the claims of the depositors and other creditors. Pauly v. O'Brien, 69 Fed. 460; Federal Reserve Bank v. Crothers, 289 Fed. 777; Vellely v. Devaney, 49 N. D. 1107 (194 N. W. 903); Galena National Bank v. Ripley, 55 Wash. 615 (104 Pac. 807, 26 L. R. A. (N. S.) 993, and note); Skagit State Bank v. Moody, 86 Wash. 286 (150 Pac. 425, L. R. A. 1916A, 1215, and note).

The plea failed to set forth any valid defense, and the court properly struck the same, on motion. The direction of a verdict in favor of the plaintiff was a correct termination of the case.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*