8727. ATLANTIC COAST LINE RAILROAD COMPANY *v.* NELLWOOD LUMBER COMPANY.

1. There was no error in overruling the plea to the jurisdiction or the demurrer to the plaintiff's petition.
2. An assignment of error upon a charge as a whole, on the ground "that the charge of the court, exhibit 'B,' was not applicable to the case; that the court erred in not charging the jury under the admitted facts, and that the defendant was not liable to the plaintiff," presents nothing for the consideration of this court.
3. In view of the sharp conflict in the evidence as to whether or not the goods in question were in the legal custody of the Barnwell Lumber Company, and in view of direct and positive testimony to the effect that the plaintiff verbally and by letter specifically notified the defendant railroad company to hold up shipment of the goods until further notice, the following excerpt from the charge of the court was not error: "If, however, after a railroad company issues a bill of lading, they have information that the party delivering the goods to the railroad is not the true owner of the goods, and the true owner instructs the railroad not to deliver the goods to the person that brought them to the road, and the railroad disregards the instruction of the true owner and ships the goods, the railroad acts at its peril."

4. All three of the written request to charge were not correct statements of law, and were therefore properly refused.

5. The verdict seems to be excessive, in that it included interest, while the plaintiff's petition does not seek to recover interest, and the motion in arrest of judgment should have been sustained. However, the judgment is affirmed on condition that the interest be written off within 10 days after the filing of the remittitur.

6. The evidence authorized the verdict.

DECIDED NOVEMBER 2, 1917.

Action for damages; from city court of Richmond county— Judge Black.    March 28, 1917.

*W. K. Miller,* for plaintiff in error.    *Alexander & Lee,* contra.

WADE, C. J.    The Nellwood Lumber Company brought suit against the Atlantic Coast Line Railroad Company in the city court of Richmond county, requiring the defendant to answer in an action for damages, for that the defendant had damaged the plaintiff in the sum of $89.30, by reason of the following facts: That during the month of December, 1914, petitioner was the owner of certain iron rails, located at Robbins, S. C., which it had contracted to sell to the Barnwell Lumber Company; that on December 18, 1914, R. H. Youngblood, an agent of the plaintiff, was sent to Robbins, S. C., to measure said iron rails, and, upon the execution of said contract by the defendant, to superintend the shipment of the rails to the Barnwell Lumber Company; that, in accordance with the terms of the contract, the rails were loaded by agents of the Barnwell Lumber Company, under the superintendence of and in the presence of R. H. Youngblood,—plaintiff's agent; that, when the rails were loaded on the defendant company's cars, plaintiff's agent notified defendant's depot agent, at Robbins, S. C., that the rails being loaded by the Barnwell Lumber Company were the property of the Nellwood Lumber Company of Augusta, Ga., and further notified defendant's agent not to permit said car of rails to go forward until released by plaintiff, who was the owner of said rails; that on December 19, 1914, plaintiff's agent, Youngblood, reported his action to the plaintiff company, who likewise notified defendant's depot agent at Robbins, S. C., that the Nellwood Lumber Company was the true owner of said rails, and instructed that the rails not be shipped, until released by them; that notwithstanding such verbal and written notice, the defendant delivered possession of said rails to the Barnwell Lumber Company; that after defendant surrendered

possession of the rails to the Barnwell Lumber Company, contrary to the plaintiff's instruction, the said Barnwell Lumber Company refused to deliver possession of the rails, and that in order to protect its rights the plaintiff incurred certain expenses in legal proceedings against the Barnwell Lumber Company to recover possession of the rails.

The defendant filed a plea to the jurisdiction of the city court of Richmond county, and, subject to that plea, demurred, on the grounds that the petition did not set out a cause of action, and that the damages claimed were too remote. The plea to the jurisdiction and the demurrer were overruled, and the defendant duly filed exceptions pendente lite. The defendant answered the petition, denying the allegations therein, and pleading that the plaintiff's written notification was not received until after the two cars of rails had been placed in the possession of the Barnwell Lumber Company by the plaintiff's agent; that the Barnwell Lumber Company was apparently the owner of the rails, and that the railroad company did not have sufficient authority to hold the rails after possession had been given to the Barnwell Lumber Company and a bill of lading issued to the latter company.

The case went to the jury and a verdict in favor of the plaintiff, for $101.80, was returned, and judgment was duly entered for that amount. The defendant filed a motion in arrest of judgment, upon the ground that the court was without power to render the judgment prayed for, and that this defect was apparent in the face of the record. The defendant's motion for a new trial was overruled, and it sued out its bill of exceptions to this court, assigning error upon various rulings of the trial court.

1. Considering first the plea to the jurisdiction, we must make reference to the act of 1881 (Acts of 1881, p. 574), which fixes the jurisdiction of the city court of Richmond county as follows: "That a city court be and the same is hereby created and established in the city of Augusta, with territorial jurisdiction over the whole county of Richmond, concurrent with the jurisdiction of the superior court to try and dispose of all civil cases, of whatsoever nature, above the jurisdiction of justices of the peace and not exceeding $5,000 in the amount involved, exclusive of interest, except in cases of divorce, cases respecting title to land and equity cases." It will be observed that the jurisdiction of the city court

of Richmond county (except as to certain cases specified) is concurrent with that of the superior court in all civil cases, of whatsoever nature, *above the jurisdiction of the justices of the peace and not exceeding* $5,000. Although the phrase, "above the jurisdiction of the justices of the peace," is not altogether free from ambiguity, it is plain to us that it was the intent of the legislature to confer jurisdiction upon the city court of Richmond county in all civil cases "without" the jurisdiction of the justice's courts; or, to state it differently, the word "above" is used synonymously with the word "without." The question is therefore whether or not the present suit is one "above," because "without," the jurisdiction of the justice's courts. By paragraph 2 of section 7 of article 6 of the constitution (Civil Code, § 6524), justices of the peace are given jurisdiction in all civil actions, arising ex contractu, and in case of injuries or damages to personal property, where the principal sum does not exceed one hundred dollars. Clearly, therefore, whether or not this suit is one "above" or "without" the jurisdiction of a justice's court depends not only upon the amount sued for, but also upon the nature of the action. As to amount, it was one properly for trial by a justice's court, since a recovery of only $89.30 is sought,—an amount less than one hundred dollars. However, as to the nature of the case, it was above or without the jurisdiction of a justice's court, since it sounded in tort, and the injury or damage was not to personal property. Although this proposition has, time and again, been decided by our courts of review, it may not be amiss to quote the first headnote in *Dorsey* v. *Miller,* 105 *Ga.* 88 (31 S. E. 736): "A justice's court has no jurisdiction of an action of tort unless the alleged wrong consisted of injuring or damaging personal property belonging to the plaintiff. Such a court, therefore, can not lawfully entertain or try a suit against a defendant for fraudulently removing property subject to a lien held by the plaintiff, or for conspiring with another so to do." See also cases cited in that decision. It is unnecessary to set out in detail the reasons why this suit is one sounding in tort, since a mere reference to the statement of facts will suffice to show that this action is ex delicto, for damages arising not from injury to personal property, but in consequence of the prior conversion of certain property belonging to the plaintiff. This suit being therefore an action ex

delicto, and consequently above the jurisdiction of the justice of the peace, and not a case over which the superior court would have exclusive jurisdiction, the plea to the jurisdiction of the city court of Richmond county was properly overruled, notwithstanding the amount involved was less than one hundred dollars.

The court properly overruled the demurrer. We do not deem it necessary to argue the points raised thereby, since, in our opinion, the plaintiff's petition clearly set out a cause of action arising from a conversion of the plaintiff's property, and the damages therein alleged were not too remote to be the basis of the suit.

2. The ruling stated in the second headnote needs no elaboration.

3. Complaint is made that the following excerpt from the charge of the court was error: "If, however, after a railroad company issues a bill of lading, they have information that the party delivering the goods to the railroad is not the true owner of the goods, and the true owner instructs the railroad not to deliver the goods to the person that brought them to the road, and the railroad disregards the instructions of the true owner and ships the goods, the railroad acts at its own peril." The plaintiff in error insists that this charge was error, for the reason that the Nellwood Lumber Company, by virtue of a contract of sale, had put the Barnwell Lumber Company in possession of the rails, and allowed the latter company to load them on the defendant's cars; that the defendant was obliged to issue its bill of lading on demand of the Barnwell Lumber Company; that it could not prevent the shipment of the rails because the Barnwell Lumber Company failed to carry out its contract with the Nellwood Lumber Company; and that the verbal and written notification was insufficient to stop the shipment. It will be observed that the plaintiff in error takes the position that the rails had already been delivered to or were in the lawful possession of the Barnwell Lumber Company, but reference to the brief of evidence shows that this was in dispute. It was the main contention of the railroad company, but was specifically denied by the plaintiff. The case of *Georgia Railroad Co.* v. *Haas,* 127 *Ga.* 187 (4) (56 S. E. 313, 119 Am. St. R. 327, 9 Ann. Cas. 677), is, in our opinion, authority for the charge here excepted to. In the fourth headnote of that case we find the following ruling: "If a person not the owner of property or en-

titled to its possession takes it and delivers it to a railroad for shipment, the true owner, who is no party to the contract, may, before delivery by the carrier, demand and reclaim his property; and as against an action of trover brought for that purpose against the carrier by the true owner, it furnishes no defense that the carrier refused to recognize his title or right and carried and delivered the property in accordance with the shipment." In the present case there was evidence that the Barnwell Lumber Company was not the owner of the rails, or entitled to their possession, and therefore without authority to deliver the rails to the railroad company for shipment. There was also evidence that the true owner of the rails notified the railroad company, both through its agent and by letter, not to make the shipment, until ordered so to do by them. There was evidence that the written notice was received by the railroad company on December 20, and that the rails did not go forward until December 21. The decision in the case of *Shellnut* v. *Central of Georgia Ry. Co.,* 131 *Ga.* 404 (62 S. E. 294, 18 L. R. A. (N. S.) 494), does not in any way militate against the decision in the *Haas* case, supra, or the decision in the case now under consideration. In the *Shellnut* case, it was held: "A common carrier is bound to receive all goods offered that he is able and accustomed to carry, and to transport and deliver such goods in pursuance of the bailment; and where he receives goods offered, the possession thereof by the person offering the same as freight being apparently rightful, though as a matter of fact it may not be actually so, the carrier will not be liable as for a conversion, in an action brought by the true owner, unless the latter intervenes before the goods are delivered and demands them or gives notice of his right to the property in question and of his intention to enforce it." In that decision Mr. Justice Beck thus clearly distinguishes the two cases: "While [in the *Haas* case, supra] it was held that a carrier can not refuse to recognize the demand of the true owner of the property, made while such property is in the carrier's possession and duly pressed, and carry it away and deliver it to a person who does not own it, or his order, merely because the carrier received it from such person as consignor, there is no intimation in that case that if the property had been carried and delivered in pursuance of the directions given by the person who, being in possession of it, offered it for

carriage before demand was made by the true owner, the carrier would have been liable as for a conversion. Indeed, the argument and the reasoning in that case tend very strongly to the conclusion which we have reached in this." Applying to the facts adduced in the instant case the two decisions above quoted from, the charge was not subject to the exception made.

4. Further complaint is made because the court refused to comply with requests to charge the jury as follows: "(1) If the Nellwood Lumber Company permitted the iron rails in question to be delivered to defendant by the Barnwell Lumber Company, as shipper, the bill of lading should have been issued to the Barnwell Lumber Company, and if it was so issued, the common carrier was bound to look to the Barnwell Lumber Company as owner. (2) I charge you, gentlemen of the jury, further that when the agent of the Nellwood Lumber Company left on the Saturday afternoon in question, after permitting the Barnwell Lumber Company to load the iron rails on the defendant company's cars, that ordinary care required that he should have demanded for the Nellwood Lumber Company a bill of lading, or receipt for these rails, if he wished the railroad company to consider the Nellwood Lumber Company the owner thereof. If plaintiff's agent left Robbins without having caused a bill of lading to be issued to the Nellwood Lumber Company by defendant for said iron rails, the railroad company was justified in issuing said bill of lading to the Barnwell Lumber Company. (3) Under the law, attorney's fees and expenses of litigation are not recoverable as damages; it is contrary to the policy of our law to permit the plaintiff to recover attorney's fees as part of the damages claimed." Under the rulings made in the *Shellnut* case, supra, and the *Haas* case, supra, the first request was properly denied, since it does not embody a correct statement of the law. The second request to charge was likewise not a correct statement of the law. It will be observed that the court was asked to charge that ordinary care required that the agent of the Nellwood Lumber Company should have demanded for that company a bill of lading, or receipt for the rails, if he desired the railroad company to consider his company the true owner thereof. It is obvious that had the judge charged as requested he would have invaded the province of the jury, since it is a well settled rule that a court is not permitted

to instruct a jury what constitutes ordinary care and what constitutes negligence. The third request to charge is also not a correct statement of the law, and was properly refused by the trial court. It is true that the Civil Code, § 4392, states that "The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." However, this section is not applicable to this case. The attorney's fees here asked for did not grow out of this suit, but were part of another legal proceeding. In the present case the plaintiff was not seeking attorney's fees in the pending suit, but merely praying for damages, including attorney's fees, incurred in its litigation with the Barnwell Lumber Company, in consequence of the delivery of the goods to said Lumber Company by the railroad company without its consent or authority. In our judgment, the case of *Ocean Steamship Co.* v. *Williams,* 69 *Ga.* 251, controls this question. The fourth headnote of that decision is as follows: "In an action for false imprisonment, expenses which were the immediate or necessary consequence of the act complained of, including counsel fees and costs incurred by reason of the imprisonment, could be taken into consideration by the jury in estimating damages; nor would it be necessary in order for such elements of damages to be considered, to show bad faith, or stubborn and litigious conduct, or unnecessary trouble and expense caused by the defendant."

5. Error is assigned upon the overruling of the motion in arrest of judgment. The plaintiff in error contends that the verdict was excessive. The verdict was for $101.80, while the suit was only for $89.30. It is apparent that the jury, acting in accordance with the charge of the court (which is not complained of), merely added two years interest to the sum sued for. However, we are constrained to hold the verdict excessive, since the plaintiff's petition sought only a recovery of $89.30 principal, without any mention of interest, and the verdict actually returned included interest amounting to $12.46, and was to that extent in excess of the amount claimed. A new trial will be refused, however, if the defendant in error will write off $12.46—the interest calculated by the jury—at the time of the entry of the remittitur as the

judgment of the trial court; otherwise the verdict will be set aside and a new trial granted.

*Judgment affirmed, on condition. Jenkins and Luke, JJ., concur.*